IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>VEROBLUE FARMS USA, INC., *et al.*,<br><br>DEBTORS. | Chapter 11 Bankruptcy<br>Case No. 18-01297<br><br>**DEBTORS' RESPONSE TO MOTION TO STRIKE AND SEAL FILED BY DEFENDANT CASSELS BROCK & BLACKWELL LLP** |
| VEROBLUE FARMS USA, INC., *et al.*,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CASSELS BROCK & BLACKWELL LLP,<br><br>DEFENDANT | Adversary Case. No. 19-09015 |

Debtors, for their Response to the Motion to Strike and to Seal Portions of Doc. No. 1 (Debtors' Adversary Complaint, the "Complaint") Pursuant to Fed. Bank. R. 7012 and Fed. R. Civ. P. 12(f) (Doc. 13) ("Motion") filed by Cassels Brock & Blackwell LLP ("Cassels") state:

I.   BACKGROUND

The Complaint alleges that Cassels, a law firm, holds property (client files) of the Debtors' estate ("Estate Property"). Cassels filed two responsive pleadings to the Complaint, its Answer and Motion to Strike (Docs. 13 and 14), which collectively admit that Cassels holds the alleged Estate Property, but does not have to turn it over, based on a hyper-technical and irrelevant assertion that Cassels narrowly and exclusively represented an affiliate of Debtors, VeroBlue Farms, Inc. ("VBF Canada").

In its Motion, Cassels represents to the Court that it did not provide legal services to any of the Debtors despite the fact that Cassels filed sworn proofs of claim for over $275,000 in all of

the Debtors' bankruptcy cases except for Debtor VBF IP, Inc.[1], for "legal services" performed through November 2017. Cassels has not withdrawn its sworn proofs of claim that undercut Cassels' Motion, and instead alleges that its pending $275,000 proofs of claim submitted in four proceedings were clerical errors. Regardless, the Complaint does not necessarily turn on the resolution of whether Cassels represented the Debtors, a factual issue that should not be resolved at the pleading stage in any event. Instead, the Complaint presents the issue of whether Cassels is holding Estate Property, which it undeniably is doing.

Debtors' Complaint contains fifty-six (56) paragraphs and twenty-three (23) exhibits, most of which are documents authored by Cassels. Cassels filed an Answer to the Complaint ("Answer," Doc. 14), but refused to answer twenty-one (21) of Debtors' allegations (paragraphs 16-22, 28-32, and 39-47) (the "Challenged Allegations"). Cassels' Motion is spurious, transparently designed to allow Cassels to excise uncomfortable allegations about its conduct. In that respect, Cassels partner Sean Maniaci ("Maniaci"), who proclaims to be an expert in several industries, including Debtors' aquaculture industry, is alleged to have taken several actions that Cassels now seeks to disavow. Cassels cites nothing more than the language of Fed. R. Civ. P. 12(f), generic statements about that rule from Wright & Miller, and a Vermont federal case. Glaringly omitted from Cassels' Motion is any citation to Eighth Circuit law, which does not support the Motion and its dual request to "strike and seal" certain allegations. Instead, the Eighth Circuit, which heavily disfavors Rule 12(f) Motions and infrequently grants them, will only strike clearly irrelevant allegations that also do not provide any important context and background. The Motion must be denied.

---

[1] Doc. 21-1 in Case No. 18-01297 (VeroBlue Farms USA, Inc.); Doc. 7-1 in Case No. 18-01301 (Iowa's First, Inc.); Doc. 1-1 in Case No. 18-01298 (VBF Operations, Inc.); and Doc. 2-1 in Case No. 18-01299 (VBF Transport, Inc.)

## II. SUMMARY OF COMPLAINT AND ANSWER

Cassels answered paragraphs 1 through 15 of the Complaint, which generally allege that: (1) Cassels, a law firm, was retained to represent the Debtors by the "Founders" of Debtors, who misappropriated or squandered close to $80,000,000[2] of debt and equity investments; (2) Cassels actively represented Debtors from around fall 2014 through late 2017, although Cassels never formally terminated its representation; (3) Cassels filed sworn proofs of claim ("Cassels Proofs of Claim"), **in these proceedings**, for $275,349.21 for "**legal services**" performed through November 2017; and, (4) Cassels failed to turnover **any** of Debtors' client files, despite a February 2019 demand to do so.

Cassels also answered paragraphs 23 through 27 of the Complaint, which expose Cassels' hypocrisy in claiming that they are not withholding Estate Property while filing sworn Proofs of Claim of over $275,000 allegedly related to that Estate Property. Now, over seven months after Cassels submitted its November 2018 Proofs of Claim, Cassels claims it was "mistaken" in submitting them (Doc. 14 at ¶ 16.) Cassels seems to forget that proofs of claim are filed under penalties of perjury, with the specific warning above the signature block that "**[a] person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**" Cassels has not withdrawn its Proofs of Claim, and its doing so at this point would not cure the fact that those Proofs of Claim expose the inconsistency in Cassels' Motion.

Cassels answered paragraphs 33 through 38 of the Complaint, which build from the previous thirty-two (32) allegations (including those that Cassels seeks to strike, see below). Collectively, these allegations (many based on Cassels' own documents, which are Complaint exhibits) establish Maniaci's prominent role in the representation of Debtors (despite Cassels

---

[2] That number has climbed to approximately $90,000,000 upon Debtors' continuing investigation.

refusing to answer other Complaint allegations regarding Maniaci's relationship to Debtors, see below). The preceding and subsequent allegations of the Complaint, including those Challenged Allegations that Cassels refuses to answer, are relevant in refuting Cassels' hyper-technical position, which is meritless in any event.

Cassels further answered paragraphs 48 through 56 of the Complaint, which encompass both counts of the Complaint (Count I for Turnover of Estate Property under 28 U.S.C.A. § 542(a), (e); Count II for Conversion).

### III. SUMMARY OF CHALLENGED ALLEGATIONS

Challenged Allegations 16 through 22 provide background as to the Founders' extensive and longstanding relationship with Cassels, both legally and otherwise to provide context as to Cassels' role with the Debtors. These particular allegations also refer to Cassels' invoices, many **encompassed by Cassels' Proofs of Claim** (*see e.g.*, Complaint ¶¶ 23-27), which show a large variety of work that Cassels performed for Debtors. Cassels' invoices are not introduced as an exhibit until paragraph 19 (as Group Exhibit A-4), one of the Challenged Allegations that Cassels says is wholly irrelevant. Yet Cassels bases its Proofs of Claim on some of these invoices.

Further, the invoices, although addressed to VBF Canada, pertain to a wide range of legal issues that did not just address VBF Canada, were sent to Debtors' offices in Texas and Iowa, and were at times paid by Debtor VeroBlue Farms USA, Inc. (Complaint ¶¶ 21-22, 27.) For example, one set of invoices pertained to Cassels' "Restructuring" legal work, through which Cassels worked with Debtors' other counsel (Jackson Walker) on the possible migration of VBF Canada stock to Debtor VeroBlue Farms USA, Inc. (*Id.*at ¶ 20.) These allegations, including

Cassels' own invoices, are relevant to the turnover of the Estate Property, besides providing important context and background, and cannot be surgically removed from the record.

Challenged Allegations 28 through 32 and 39 through 47 provide important context and background as to the role of Cassels' partner Maniaci. Maniaci was prominent in Cassels' representation of the Debtors alleged in the Complaint, as is evident from the Cassels invoices attached to the Complaint, some of which are encompassed in the Proofs of Claim. (*See e.g.*, Doc. 1 at Exhibit A-4, correspondence from Maniaci to representatives of Debtor VeroBlue Farms USA, Inc. transmitting Cassels' invoices.) The Complaint exhibits several of Maniaci's communications with alleged representatives of Debtors to email addresses on Debtors' server, such as to Founder James Rea, Founder Les Wulf, Founder Bruce Hall, alleged employee Tracy Arbanas, and counsel Rick Dahlson of Jackson Walker (Complaint, Exhibits A-3, A-5 through A-7, and A-9). Further, exhibited emails between the Founders and Maniaci establish the extensive inter-relationship among Cassels, Maniaci, the Founders, VBF Canada, and the Debtors. (*Id.* at Exhibits A-3 through A-7 and A-9.)

Also, Maniaci, on Cassels letterhead, authored a letter to directly influence **these proceedings** on behalf of the so-called Ad Hoc Committee. Maniaci, directed his letter to his "**Fellow** VBF Shareholder[s]," identifying Debtor VeroBlue Farms USA, Inc. as "VBF," and sending the letter to shareholders of Debtor VeroBlue Farms USA, Inc. Maniaci's letter identifies then-pending filings and issues in these bankruptcy proceedings. Paragraph 31 of the Complaint references Exhibit A-12, a document through which Maniaci personally granted Debtor VeroBlue Farms USA, Inc. the option to purchase his stock in VBF Canada, again

showing the inter-relationship between VBF Canada and Debtors.[3] These allegations are relevant to the Complaint, since they demonstrate the inter-relatedness between Cassels and Debtors to the point that one of its own partners viewed the Debtors and VBF Canada as one in the same. Maniaci took the time to disparage Debtors in that letter through his own blurring of the distinction between VBF Canada, a defunct shell company essentially succeeded by Debtor VeroBlue Farms USA, Inc. Obviously, Maniaci saw VBF Canada and Debtors as one in the same. Maniaci's letter is no doubt embarrassing to Cassels and the legal profession as a whole, but that does not make it any less important to understanding the background and context for Cassels' relationship to Debtors and the Complaint.

## IV. LAW

### A. Rule 12(f)

The Eighth Circuit has noted that "[t]his court has rarely been called upon to interpret Rule 12(f)," for good reason, since "we have previously held that '[m]otions to trike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F. 3d 1059, 1063 (8th Cir. 2000) (citations omitted). In *Stanbury*, the District Court granted a Rule 12(f) Motion, finding that the complaint's allegations contained irrelevant information included only to impugn a sitting judge. *Id.* The Eighth Circuit reversed, finding that although the challenged allegations detailed the judge's potential conflict of interest issues at length, "that information also provides important context and background to Stanbury's suit." *Id. See also*, *Mortensen v. Chicago, Great Western Ry. Co.*, 2 F.R.D. 121 (S.D. Iowa 1941)

---

[3] *See also,* for example, Exhibit A hereto, Certificate of Formation for Opposing Flow Aquaculture, Inc. ("OFA"), a Texas corporation allegedly established by the Founders and Maniaci to be a subsidiary of Debtor VeroBlue Farms USA, Inc. Maniaci and Founder John E. ("Ted") Rea are listed as OFA directors, further showing that Maniaci's role for Debtors was not limited to Canada.

(denying a Rule 12(f) Motion that the Court viewed as seeking to strike information that could be found relevant at a later juncture in the case, after discovery, and when evidentiary issues are ripe); *Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 671 (N.D. Iowa 2006) (citing *Stanbury,* denying Rule 12(f) Motion because the allegations were better addressed later in the litigation, and because they provided "important context and background" "even if not 'strictly relevant'"); *Benson v. City of Lincoln*, 2019 WL 1766159, *16 (D. Neb. April 22, 2019, Case No. 4:18-CV-3127) (denying Rule 12(f) motion to strike certain allegations of a complaint because they provided context and background, or relevant to "some object of the pleader's suit.") Federal Court's disfavoring of Rule 12(f) motions is consistent with the overriding policy "favoring a trial on the merits and against depriving a party of his day in court." *Fox v. Studebaker-Worthington, Inc.,* 516 F. 2d 989, 996 (8th Cir. 1975). That is what Cassels seeks to do through its spurious Motion.

**B.      Sealing of Court Documents**

Pursuant to 11 U.S.C. § 107(a), "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." As to the sealing of documents, "[t]he party seeking closure or sealing must show that such a restriction of the first amendment right of public access is necessitated by a compelling public interest." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F. 2d 569, 574 (8th Cir. 1988) (citations omitted). "If the district court decides to …seal documents, it must explain why …sealing was necessary and why less restrictive alternatives were not appropriate." *Id.* "The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *In re Neal*, 461 F. 3d 1048, 1053 (8th Cir. 2006). "[O]nly the most compelling reasons can justify non-

disclosure of judicial records." *See also, In re Neal*, 461 F. 3d 1048, 1054 (8th Cir. 2006) (reversing District Court's sealing of records pursuant to § 107 and Fed. Bankr. R. 9018, since the proponent failed to overcome the overwhelming presumption of public access, and that the challenged material was scandalous and irrelevant to the proceedings, even though it did potentially and regrettably cause negative publicity to those identified in the document).

**C.     Estate Property**

Cassels has no legal basis to withhold client file materials from Debtors, which are property of the bankruptcy estate. 11 U.S.C.A. § 542 (a), (e). The law requiring the turnover of the **entirety** of Debtors' client files is plentiful. *See e.g., In re Hotels Nevada, LLC*, 458 B.R. 560, 564 (Bankr. D. Nev. 2011) (requiring a law firm to turnover client files to the trustee); *In re Mirant Corp.*, 326 B.R. 646, 654 (Bankr. N.D. Tex. 2005); *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 456 (Bankr. M.D. Fla. 2013) ("THMI, as a former client, is presumptively entitled to its files. And courts uniformly agree that an attorney cannot invoke the work product doctrine to deny its client access to its files."); *see e.g.*, *Iowa Supreme Court Attorney Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, (Iowa 2013) (stating that an attorney's failure to deliver to a client its file after a request from the client is improper); *Iowa Supreme Court Attorney Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 307 (Iowa 2009) (finding that the attorney engaged in misconduct when he refused to return client files); *Iowa Supreme Court Attorney Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 820 (Iowa 2007) (adopting the "entire file" approach which requires an attorney to return to the client the complete file, as, the client owns the complete file.); *McVeigh v. Fleming*, 410 S.W.3d 287, 289, 2013 WL 5460058 (Mo. Ct. App. 2013) (noting that a client's file is property that belongs to the client); *Estate of Bonifer by & through Bonifer v. Kullmann Klein & Dionenda, P.C.*, 457 S.W.3d 765, 768, 2014 WL 6464011

(Mo. Ct. App. 2014) ("The Estate is correct that [the lawyer] had a duty to give the Estate access to the Decedent's legal file."); *In re Touch America Holdings, Inc.*, 2009 WL 1393078 (Bankr. D. Del. 2009) (holding that former counsel was required to turnover certain documents, including research memos, drafts of documents analyzing legal and factual issues, outlines of research issues, and computerized data reflecting expenses and attorney time records, even if documents were circulated only within the firm); *In re C.W. Mining Co.*, 442 B.R. 44 (Bankr. D. Utah 2010) (ruling that attorney notes and research memoranda were property of the debtor estate and the work product doctrine did not prohibit disclosure in part, under Fed. R. Civ. P. 26, because the trustee needed the documents to support its allegations of bad faith concerning the debtor's management and shareholders); *In re Indiantown Realty Partners Ltd. Partnership*, 270 B.R. 532 (Bankr. S.D. Fla. 2001) (holding that documents were not subject to attorney-client privilege, and that the joint defense and work product doctrines were inapplicable when debtor filed an adversary complaint against a law firm that at one time jointly represented debtor, debtor's former general partner, and former general partner's president).

However, the inquiry under 11 U.S.C.A. § 542 (a), (e) does not necessarily turn on whether Cassels was Debtors' counsel, although a finding to that effect would absolutely require Cassels to turnover the files. Instead, the question is whether Cassels is holding Estate Property, which it undeniably is doing. Indeed, Debtor VeroBlue Farms USA, Inc., as depicted by exhibits to the Complaint (*see e.g.*, Doc. 1, at pages 53-56, showing that Debtor VeroBlue Farms USA, Inc. paid over $125,000 for legal fees to Cassels in July 2016), paid for much of Cassels' legal work and no representative of VBF Canada has come forward to claim privilege or that the files should not otherwise be produced. That is because, as Cassels well knows, Debtor VeroBlue Farms USA, Inc., early in the venture's existence, succeeded VBF Canada as the active

operational and administrative entity, leaving VBF Canada as a defunct shell despite Cassels' regular performance of legal work for the venture after that date.

**D.    Attorney-Client Relationship**

Cassels attempts to rely, in its Rule 12(f) Motion, on an implicit assertion that the factual issue of whether Cassels represented the Debtors can be resolved at the pleading stage. Again, Debtors' Complaint does not necessarily turn on whether Cassels represented all Debtors (which Cassels itself asserts through its Proofs of Claim), but whether Cassels is holding property of the Debtors' estate.   Regardless, the question of whether Debtors are or were Cassels' clients cannot be resolved at the pleading stage.  *See e.g.*, *Metro Sales, Inc. v. Core Consulting Group, LLC*, 275 F. Supp. 3d 1023, 1045 (D. Minn. 2017) ("It is typically a fact question whether an attorney-client relationship exists."); *Ruden v. Jenk*, 543 N.W. 2d 605, 611 (Iowa S.C. 1996) ("Clearly there is a factual issue as to the existence of an attorney-client relationship between Jenk and the plaintiffs personally.") Cassels repeatedly asserts in its Motion that Debtors never retained Cassels because the Complaint attaches no "representation agreement."  However, "[t]he existence of an attorney-client relationship is governed by contract principles and may be either express, such as a relationship based on an actual written agreement, or **implied** from the conduct of the parties." *Iowa Supreme Court Disciplinary Bd. v. Blessum*, 861 N.W. 2d 575, 587 (Iowa S.C. 2015) (emphasis added). A related factual issue is whether Debtors were third party beneficiaries of Cassels' alleged exclusive attorney-client relationship with VBF Canada. *See e.g.*, *Estate of Leonard v. Swift*, 656 N.W. 2d 132, 145 (Iowa S.C. 2003).

<h3 style="text-align:center">V.    <u>ARGUMENT</u></h3>

The factual background and law make Debtors' argument.  Cassels is trying to surgically excise those allegations it finds to be uncomfortable and would rather not answer from the

Complaint, though it has no grounds to do so. The Challenged Allegations pertain to Cassels' extensive and multi-faceted relationship to the Debtors over at least three years (which, cost Debtors hundreds of thousands of dollars in legal bills) and thus, are relevant to the Complaint. The Challenged Allegations even include allegations relating to Cassels' alleged legal work encompassed in its Proofs of Claim. Cassels' belated assertion that its sworn and pending Proofs of Claim, submitted to this Court under stiff penalties for perjury, is "mistaken" is irrelevant, unsupported, and only illustrates the lengths to which Cassels will go to prevent Debtors from having their day in court on its Complaint, including the Challenged Allegations.

Cassels also complains that the Complaint attaches "privileged and confidential documents" based on nothing more than the standard and generic boilerplate admonitions on email blocks regarding confidentiality. (Motion, ¶¶ 16-17.) Cassels complains that some of the Complaint exhibits pertain to legal matters that have nothing to do with the Debtors, and that the Complaint fails to explain how Debtors obtained those emails. For the record, email exhibits were legitimately obtained, and nobody except for Cassels has complained about Debtors' exhibiting of this evidence. Indeed, the attorney-client privilege belongs to the client, and no client has asserted a privilege on such documents. Further, there exists no compelling reason to overcome the Federal Courts' strong presumption of public access to court filings, and Cassels does not genuinely even try to cite any in its Motion.

At best, the Motion is a disguised motion for summary judgment, without any supporting affidavits or admissible evidence, through which Cassels seeks to foreclose certain allegations at the pleading stage. This is improper, and therefore this Court should follow the Eight Circuit's general predisposition to deny Rule 12(f) motions, and do the same here. Cassels has provided no compelling reason to do otherwise, and Cassels unsupported allegations, including those of

clerical error, are clearly overcome by Debtors' extensive documentary exhibits, which support Debtors' well-pleaded allegations.

**In conclusion**, Debtors respectfully request that Defendant's Motion (Doc. 13) be denied, and that Defendant be required to answer the Complaint in full, including the Challenged Allegations, within fourteen (14) days, plus other relief deemed just.

**Dated: July 30, 2019**

| | |
|---|---|
| THOMPSON COBURN LLP | ELDERKIN & PIRNIE |
| /s/ Robert H. Lang | /s/ Dan Childers |
| Rob Lang | Dan Childers |
| 55 E. Monroe Street, | 316 Second Street SE, Suite 124 |
| Suite 3700 | P.O. Box 1968 |
| Chicago, IL 60603 | Cedar Rapids, IA 52401 |
| Telephone: (312) 580-2242 | Telephone: (319) 362-2137 |
| Facsimile: (312) 580-2201 | Facsimile: (319) 362-1640 |
| Email: rhlang@thompsoncoburn.com | Email: dchilders@elderkinpirnie.com |
| *Admitted Pro Hac Vice* | |

*Counsel for the Debtors*

# CERTIFICATE OF SERVICE

      Arianna Thornton, a non-attorney, hereby certifies under penalties as provided by law, that on July 30, 2019, she caused a true and correct copy of the foregoing **Debtors' Response to Motion to Strike and Seal Filed By Defendant Cassels Brock & Blackwell LLP** to be served upon counsel of record via ECF system of Iowa:

                                            /s/ Arianna Thornton