UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>VeroBlue Farms, Inc.,<br><br>    Debtor<br>_____<br><br>VeroBlue Farms USA, Inc.,<br>    Plaintiff<br>vs.<br><br>Cassels Brock & Blackwell LLP,<br>    Defendant | Chapter 11<br><br>Bankruptcy No. 18-01297<br><br><br><br><br><br><br>Adversary No. 19-09015 |

### ORDER RE: DEBTOR'S APPLICATION IN SUPPORT OF ITS REQUEST FOR ATTORNEYS' FEES

This fee application came before the Court by telephonic hearing. Dan Childers and Robert Lang appeared for Debtor/Plaintiff VeroBlue Farms USA, Inc. ("VBF"). Michael D. Schwartz appeared for Defendant Cassels Brock & Blackwell LLP ("Cassels"). The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## STATEMENT OF THE CASE

Before the Court is VBF's Application in Support of their Request for Attorneys' Fees Pursuant to Court's April 21, 2022 Order. (ECF Doc. 209). The Order directed Cassels to pay VBF $5,000 for its failure to provide a privilege log and to pay reasonable attorneys' fees VBF incurred in attempting to get such compliance. VBF submitted its application for attorneys' fees of $175,027.79 and arguments in support of it. Cassels asserts that no attorneys' fees or costs should be awarded to VBF beyond the $5,000 already paid by Cassels. The Court disagrees with both parties and awards $45,062.00 in attorneys' fees to VBF.

## BACKGROUND

VBF, a fish farming operation, filed for Chapter 11 bankruptcy on September 21, 2018. Cassels, a Canadian law firm, submitted proofs of claim seeking payment of its fees as a creditor of VBF. VBF filed this adversary proceeding on March 27, 2019. Cassels withdrew its proofs of claim after this adversary was filed.

Discovery began in August 2019 with an original deadline of December 31, 2019. (ECF Doc. 26). VBF filed a Motion to Compel Discovery on February 21, 2020. (ECF Doc. 49). The Court granted VBF's motion and entered an Order directing Cassels to comply with the discovery rules and provide a privilege log. (ECF Doc. 53).

Cassels provided responses to discovery requests on March 13, 2020. Cassels asserted claims of attorney-client privilege. Cassels then again failed to provide a privilege log to support those assertions. On March 31, 2020, Cassels filed a Motion to Dismiss the Adversary Proceeding and argued the Court lacked personal jurisdiction over Cassels. (ECF Doc. 60). The Court denied this motion. (ECF Doc. 98). VBF sent Cassels a meet-and-confer letter to resolve the continuing deficiencies in the Court-ordered discovery and requested the parties confer by April 8, 2020. Cassels responded that it would be unable to communicate with VBF by then and claimed that its supplemental responses fully complied with the Court's Order.

VBF filed its Motion for Contempt on April 9, 2020, asserting Cassels had failed to comply with the Court's February 12, 2020 Order compelling discovery. (ECF Doc. 67). VBF pointed out Cassels had not filed a privilege log despite the Court specifically ordering Cassels to provide a privilege log to support any assertions of attorney-client privilege. Cassels responded by asserting that the requested documents and information were privileged, irrelevant, and otherwise subject to a "solicitor's lien" under Canadian law. (ECF Doc. 74). Cassels asserted that its responses complied with the Court's Order in all other respects, but Cassels did not address the privilege log. Cassels later argued that it could not file a privilege log because such a log would reveal the location of these important

documents and provide an improper advantage to VBF. Cassels argued, in spite of the Court's Order on the privilege log, that such a log "would be a waste of the parties' resources and a waste of judicial resources." (ECF Doc. 68).

The Court then set all pending motions—related to dismissal, discovery, and contempt—for hearing on June 18, 2020. The Court heard argument and came to the following conclusion about how the rulings would be handled. The Court noted it would first rule on Cassels's Motion to Dismiss for lack of jurisdiction. If the Court concluded it had jurisdiction, the Court would deal with the contempt issues and Cassels's new motions to stay discovery.

On October 7, 2020, the Court issued its ruling on the Motion to Dismiss concluding that the Court had jurisdiction. (ECF Doc. 98). Cassels immediately appealed. Questions were raised about the propriety of continuing with the discovery dispute while appeal was pending. The Court eventually moved forward on the pending contempt and stay of discovery motions. The Court heard argument on January 15, 2021.

The Court granted VBF's Motion for Contempt on April 22, 2021. (ECF Doc. 117). The Court entered an Order finding Cassels in contempt of court for failing, among other things, to provide a privilege log. The Court ordered sanctions of $1,000 per day until full compliance was achieved. (Id.).

On May 6, 2021, Cassels again appealed this Court's Order and filed a Motion to Stay Pending Appeal. (ECF Doc. 120). The Court granted Cassels's Motion to Stay Pending Appeal on May 18, 2021, with the condition that Cassels post a $50,000 bond. (ECF Doc. 127).

On June 25, 2021, Cassels filed a new Motion for Protective Order arguing that VBF was using the current adversary proceeding to circumvent the discovery process in the Texas litigation and to disregard the Texas court's June 15, 2021, order staying depositions. (ECF Doc. 148). The Court denied the Motion for Protective Order as moot. (ECF Doc. 167).

On September 23, 2021, Cassels filed a Motion to Reconsider the Court's Contempt Order. (ECF Doc. 182). On October 15, 2021, VBF filed an objection to the Motion. (ECF Doc. 187). On December 1, 2021, after several extensions, the Court held a telephonic hearing on the Motion to Reconsider. During the hearing, Cassels asserted that VBF was using this adversary proceeding to obtain "back door discovery" for the Texas litigation. Cassels emphasized that under the Order compelling discovery and the Order on contempt, VBF was improperly receiving more relief than VBF requested in its Complaint in this Adversary. Cassels again requested the Court to stay proceedings pending the resolution of the Texas litigation. VBF argued, among other things, that the Court's ruling was correct and that a stay of proceedings would be patently unfair. On January 18, 2022, Cassels

5

filed a Motion to Submit New Information in support of its Motion to Reconsider. (ECF Doc. 194).

On April 21, 2022, the Court granted Cassels's Motion to Reconsider in part, limiting the Contempt ruling to the issue of the privilege log. The Court fined Cassels $5,000 for its failure to provide a privilege log and ordered Cassels to pay the attorneys' fees VBF incurred in attempting to get discovery compliance. The Court further ordered a stay in proceedings.

The Court later held a telephonic hearing on the sole issue of VBF's attorneys' fees and ordered full briefing on the issue. VBF filed an Application in Support of their Request for Attorneys' Fees requesting $175,027.79 in attorneys' fees. (ECF Doc. 209). Cassels objected, asserting that no fees and no costs beyond the $5,000 fine should be awarded to VBF. (ECF Doc. 210). Cassels argued VBF is responsible for the increased fees and expenses in this matter. VBF responded, asserting that the fees requested are reasonable.

The Court held a telephonic hearing on VBF's Application in Support of their Request for Attorneys' Fees. The Court heard argument and took the matter under advisement.

## DISCUSSION

Cassels's first objection is that no fees should be awarded because it did nothing wrong. The Court rejects that assertion on its face. The Court determined

6

that—at a minimum—Cassels failed to provide a privilege log to support its claims of privilege—even **after** the Court **ordered** the production of a log. The only thing the Motion to Reconsider did on this issue was to withdraw the non-attorney fee sanction of $1,000 per day and impose a flat non-attorney fee sanction of $5,000. In that same ruling the Court specifically stated that Cassels was still in violation of the Court order to provide the privilege log **and** attorney fee sanctions for that violation were to be decided. There was never a suggestion that there was no violation of discovery rules or the Court's order. Cassels's continued insistence that it did nothing wrong is unwelcome, unpersuasive, and borders on the frivolous.

The only issue is the amount of the sanction. This Court wrote on the issue of discovery sanctions and attorney fees in Crooked Creek, where it set out the following authority:

> [Federal] Rule [of Civil Procedure] 37(b)(2)(a) provides that a court may issue sanctions when a party fails to obey a discovery order.
>
> Apart from the power granted in Rule 37, courts also have an "inherent power . . . to levy sanctions in response to abusive litigation practices." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980). A court may invoke this inherent power even if procedural rules exist that allow for sanctions on the same conduct. Chambers v. NASCO, Inc., 501 U.S. 32, 49 (1991). The "primary aspect of that [power] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id.
>
> The Supreme Court has recognized that "a court may assess attorney's fees as a sanction for the willful disobedience of a court order." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258 (1975) (quoting

7

<u>Fleischmann Distilling Corp. v. Maier Brewing Co.</u>, 386 U.S. 714, 718 (1967) (internal quotation marks omitted). A court may also award attorney's fees when a party has acted in bad faith. <u>Id.</u>

<u>In re Crooked Creek Corp.</u>, 533 B.R. 274, 279 (Bankr. N.D. Iowa 2015).

The Court need not rely on its inherent power here because Rule 37(b)(2)(C) provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the **reasonable** expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Cassels's decision to disregard the Court order to provide a log is not substantially justified. Continuing argument on this issue borders on bad faith.

## I. Reasonableness

Reasonableness of the amount of fees requested is the only issue to be addressed. This Court has also written on "reasonableness" of fees under 11 U.S.C. §§ 330 & 506(b). While those cases do not address the precise issue now before the Court, they do address how reasonableness in attorney fee awards should be determined. In <u>Kurtenbach</u>, the Court reviewed fees under § 506(b) and noted:

> § 506(b) is not a blank check for oversecured creditors to incur any amount of legal fees and have them paid by the debtor. <u>In re Johnston</u>, 2005 Bankr. LEXIS 1261, at*19 (Bankr. N.D. Iowa June 27, 2005). Indeed, recovery of attorney fees under § 506(b) is expressly conditioned upon a finding that the fees are "reasonable." 11 U.S.C. § 506(b). "Courts have broad discretion in reaching a conclusion that fulfills the purpose of the **reasonableness element** found in 11 U.S.C. § 506(b) which is: **to prevent creditors from fail[ing] to exercise restraint** in the attorneys' fees and expenses they incur,

8

perhaps exhibiting **excessive caution, overzealous advocacy and hyperactive legal efforts**." Matter of Fansteel, Inc., 2017 Bankr. LEXIS 1265, at *8 (Bankr. S.D. Iowa May 9, 2017) (citations omitted) (emphasis added). The following are among the factors courts consider in determining whether attorney fees are reasonable under § 506(b):

> the complexity of the case; the hourly rates charged and the rates in the locality; whether the services were necessary to protect the client's interest; whether attorneys were able to efficiently and competently provide the required services; whether billing judgement was exercised to avoid duplicate or unnecessary services; the results obtained; and the amounts charged in similar cases.

Id. (citations omitted).

In re Kurtenbach, No. BR 18-01607, 2020 WL 7034405, at *3 (Bankr. N.D. Iowa Nov. 30, 2020) (emphasis added).

In Bailey Ridge Partners, this Court addressed the reasonableness of fees under § 330:

> Bankruptcy Code § 330 provides:
>
>> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, **the court may award to** a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—
>>
>> (A) **reasonable compensation for actual, necessary services rendered by the** trustee, examiner, ombudsman, professional person, or **attorney** and by any paraprofessional person employed by any such person; **and**
>>
>> (B) **reimbursement for actual, necessary expenses**.
>
> 11 U.S.C. § 330. "**Section 330 permits the court** ... **to award** compensation that is **less than** the **amount requested**. The bankruptcy

9

court has broad power and discretion to award or deny attorney fees under § 330(a)." In re Agriprocessors, Inc., Bankr. No. 08-02751, 2009 WL 4823808, at *2 (Bankr. N.D. Iowa Dec. 8, 2009) (citation omitted) (emphasis added).

"The lodestar method, calculated as the number of hours **reasonably** expended multiplied by a **reasonable** hourly rate, is the appropriate calculation of fees." Id. at *1 (emphasis added). "**To determine the reasonable** rates and hours, the Bankruptcy Code directs courts to consider factors including:

- the time spent;

- the rates charged;

- the necessity of the services for administration of the case; the reasonableness of the amount of time spent in light of the complexity, importance and nature of the problem, issue or task addressed; and

- the reasonableness of the requested compensation compared to the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases."

Id. at *1–2 (citing In re Peterson, 251 B.R. 359, 364 (B.A.P. 8th Cir. 2000)).

When counsel seeks approval of fees under § 330, it is their burden to meet this standard and show they are entitled to fees . . . .

This Court has applied the following [additional] general standards in reviewing fees: (1) "Attorneys generally will not be compensated for preparing, submitting or defending their fee applications"; (2) "[S]ecretarial work performed by lawyers" is not compensable; (3) "Time charged for travel should be billed at one-half the standard hourly rate"; and (4) "Fees are not allowed for simply reviewing the work product of another or for duplicative billing by attorneys involved in intra-office conferences." In re Agriprocessors, Inc., 2009 WL 4823808, at *2. "In reviewing and awarding fee applications, the court must make a cost/benefit analysis." In re Cumberland Farms, Inc., 154 B.R. 9, 10 (Bankr. D. Mass. 1993).

In re Bailey Ridge Partners, LLC, No. BR 17-00033, 2018 WL 3655385, at *5

(Bankr. N.D. Iowa June 28, 2018) (emphasis added).

10

Each authority for awarding attorney fees—Rule 37, 11 U.S.C. § 330, and 11 U.S.C. § 506(b)—requires an analysis that focuses on reasonableness. Thus, the Court looks at the factors used in the § 506(b) and § 330 cases for assistance in making the reasonableness determination under Rule 37.

### A. Complexity of the Case

As in Kurtenbach, "[t]his has been a complicated case, with . . . more than its [fair] share of twists [and] turns." Kurtenbach, No. BR 18-01607, at *4. Not all the complexity, however, relates to the issue here of whether fees are reasonable under the circumstances. The question here is what fees were reasonable and necessary to get a privilege log and enforce the Court's order. Admittedly, this required some significant amount of legal work from VBF, but VBF was not entitled to make an unrestrained claim of fees for all the work it chose to do.

The Court believes that the twists and turns related to what should have been a more straightforward issue may have caused some "excessive caution" or "overzealous advocacy" in the approach of VBF's attorneys. Reasonableness standards are intended to check claims for unrestrained billing based on such "hyperactive legal efforts." Matter of Fansteel, Inc., No. 16-01823, 2017 WL 1929489, at *3 (Bankr. S.D. Iowa May 9, 2017) (citation omitted). The Court finds the amount of work VBF's attorneys billed here reveals their "excessive caution" and/or "overzealous advocacy."

## B. Hourly Rates

The hourly rates charged by VBF's Chicago firm raise an issue of reasonableness. They are quite a bit above rates charged by VBF's local counsel here—who happens to be one of the best and most highly compensated lawyers to appear before this Court. This factor cuts in favor of a downward adjustment to Chicago counsel's rates. Because local counsel's top rate is $400 per hour and Chicago counsel's top rate is $660 for a lawyer with less experience than local counsel has, the Court believes it would be reasonable to adjust all Chicago lawyers' fees to a flat rate of $450 per hour. The next question presented is the "necessity of the work," which focuses on the number of hours billed.

## C. Necessity of the Work

In general terms, and subject to the discussion of other factors below, VBF's lawyers have shown that at least some of the work was necessary. In a very general sense, counsel for VBF provided many of the types of services required to get discovery compliance. The issue the Court has is with the amount of work done and billed to get compliance with the Court order. In a situation where this Court's order is being ignored, that fact only needs to be pointed out to the Court. Here, Cassels never even argued that it had complied with the order on the privilege log. Nevertheless, VBF attorneys spent a large amount of time

attempting to get compliance.  Much of that time seems to be excessively cautious or overly zealous work.

There are two particular categories of work the Court views as entirely unnecessary here: (1) the extensive work and billing for preparation of the fee application, and (2) the work done and billed for preparation of the original Motion to Compel.  In briefing, counsel for VBF acknowledged that this Court normally does not allow time for fee application preparation.  Despite acknowledging this Court's general rule, counsel for VBF still seeks to recover $48,301 for work on the fee applications.  The Court concludes that this work was not "necessary" to pursue enforcement of the discovery order.  Thus, those fees for preparing the fee application will be disallowed entirely.

The fees for preparing the Motion to Compel are similarly unnecessary.  The practice of this Court is rarely, if ever, to award fees for a first Motion to Compel.  There is no reason to deviate from that practice here.  The Court therefore denies the total of $14,073.25.

After those two reductions, the remaining sum of fees claimed by VBF that still must be dealt with is $112,655.  That amount is still subject to the reductions suggested by analysis of the other subfactors.

### D. Efficient and Competent Services

To be clear, there is no dispute about competency here. VBF's local counsel is, as noted above, one of the very best attorneys to appear before this Court. National counsel from Chicago is equally excellent. The only question under this factor is the efficiency of the work done.

Like VBF in this case, a client receiving these services generally would have every right to consider that these fee billings reflected work done efficiently enough for its own purposes. Under the reasonableness inquiry, however, the Court is looking at efficiency with an eye toward objective reasonableness and the average reasonable client. The record contains a variety of fee entries that VBF's attorneys have not shown to be reasonably efficient.

As noted above, the issue of getting compliance with the Court's discovery order on the privilege log was not complicated. The amount of work billed here for fee award purposes was not reasonable. Again, the amount of work may very well have been done to please VBF, an aggressive litigating party. VBF may very well have demanded such an approach, but that does not make it efficient for purposes of the reasonableness analysis. VBF's counsel has, at a minimum, failed to establish efficiency here.

### E. Billing Judgment and Duplicative Services

An additional factor to be considered is "whether billing judgment was exercised to avoid duplicate or unnecessary services." Fansteel, No. 16-01823, at *3 (citation omitted). "Billing judgment is reflected in staffing a file in a manner that efficiently provides the most cost-effective representation necessary to a client's interest without redundant, duplicative, and unnecessary services." Id. at *5. In this Court's view, billing judgment also includes a final review of the bills to ensure they meet the reasonableness requirements for awarding fees to the other party. This requires the disallowance of certain entries that, in the context of a normal billing setting (i.e., outside the context of awarding fees to be paid as a sanction), may very well be perfectly acceptable to a client that wanted its lawyers to use excessive caution and/or an aggressive, extra-zealous approach.

To be clear, this Court is not suggesting that all work it now categorizes as unnecessary or excessively cautious is without value. The question is not whether diligent lawyering has occurred. The question is whether the level of diligence is reasonable in determining an award of fees for discovery violations. Here, there is insufficient evidence for the Court to conclude that VBF exercised billing judgment to minimize the fees for its apparently excessive efforts.

### F. Results Obtained

VBF's counsel has sufficiently shown that it obtained excellent results for VBF. It achieved a victory on contempt and a finding by the Court that no discovery log was provided—even after production was ordered by the Court.

### G. Amounts Charged in Similar Cases

Neither party has identified any similar case where similar amounts were charged. Admittedly, this is a unique case. The nearest related case is <u>Crooked Creek</u>, in which the Court awarded $17,763.50 in attorney fees for a willful violation of discovery rules. 533 B.R. at 281. The severity of the violation here, however, makes this a different case.

## II. Analysis of Factors Effecting Reasonableness of Fees

As noted above, the factors relevant to determining reasonableness of fees favor reduction of the allowable fees in this case. Having conducted an in-depth review of the record, the Court concludes that a 60% reduction in the remaining total requested fees of $112,655 is appropriate. <u>See</u> <u>Harris v. Chipotle Mexican Grill, Inc.</u>, No. 13-CV-1719 (SRN/SER), 2018 WL 617972, at *9–14 (D. Minn. Jan. 29, 2018) (using a percentage-based reduction); <u>Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.</u>, No. CV 13-2326 ADM/BRT, 2016 WL 2637801, at *8 (D. Minn. May 6, 2016) (same); <u>Walman Optical Co. v. Quest Optical, Inc.</u>, No.

11-CV-0096 PJS/JJG, 2012 WL 3248150, at *14 (D. Minn. Aug. 9, 2012) (same); In re Robertson Cos., Inc., 123 B.R. 616, 622 (Bankr. D.N.D. 1990) (same).  Thus, the Court hereby finds that the reasonable amount of VBF's allowable attorneys' fees in this discovery sanction case is $45,062.00.  Such a reduction fulfills the purpose of the reasonableness inquiry and more accurately reflects the fees that are compensable by the estate.

## CONCLUSION

The Court finds that VBF has failed to meet its burden of establishing that the full amount of requested fees is reasonable.  The Court reduces the fees compensable to $45,062.00.

IT IS HEREBY ORDERED THAT:

1. The Objection is granted in part and denied in part.

2. Fees in the amount of $45,062.00 are allowed as reasonable.

3. Fees in the amount of $129,965.79 are denied.

Ordered:
April 19, 2023

Thad J. Collins
Chief Bankruptcy Judge