## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | Chapter 11 |
| VeroBlue Farms USA, Inc., *et al.*, | Bankruptcy No. 18-01297 |
| Debtors | |
| _____ | |
| VeroBlue Farms USA, Inc., *et al.*, Plaintiffs | |
| vs. | Adversary No. 19-09015 |
| Cassels Brock & Blackwell LLP, Defendant | |

### OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

The matters before the Court are cross motions for summary judgment filed by VeroBlue Farms USA, Inc. ("VBF") (Doc. 252) and Cassels Brock & Blackwell LLP ("Cassels") (Doc. 258) and a Motion to Compel and for Sanctions filed by VBF (Doc. 256). The Court held an evidentiary hearing on December 2, 2024. Attorneys Dan Childers and Robert H. Lang appeared for VBF. Attorneys Brandon M. Schwartz and Michael D. Schwartz appeared for Cassels. Simultaneous briefs were filed on January 1, 2025.

### I. STATEMENT OF THE CASE

VBF brought this adversary proceeding seeking the turnover of its client file from Cassels. VBF asserts that an attorney-client relationship existed between the parties, making the file VBF's property. Cassels denies having any files related to

VBF and claims it represented a separate entity, VeroBlue Farms, Inc. ("VBF Canada") and that all the documents are related to that representation and are subject to attorney-client privilege. VBF filed this Motion to Compel and Motion for Summary Judgment on January 11, 2024. The next day, Cassels filed its own Motion for Summary Judgment. A number of pleadings were then filed in response, including VBF's Objection to Cassels' Motion (Doc. 262) and Support Document (Doc. 263); Cassels' Objection to VBF's Motion (Doc. 264) and Response (Doc. 266); VBF's Reply (Doc. 267); Cassels' Reply (Doc. 269); Cassels' Motion to Supplement the Summary Judgment Record (Doc. 270); VBF's Support Document (Doc. 285); Cassel's Position Statement and Request for Ruling (Doc. 287).

The Court held an evidentiary hearing on the issues related to attorney-client privilege. After reviewing the evidence and arguments, the Court concludes that Cassels has failed to show that all of the documents at issue are protected by attorney-client privilege, and summary judgment for VBF is appropriate.

## II. FINDINGS OF FACT

### A. Pre-Bankruptcy

VBF is a Nevada corporation and subsidiary of its now-dissolved Canadian parent corporation, VBF Canada. VBF Canada was incorporated under the Canada Business Corporations Act on May 5, 2014. VBF was incorporated several months later, on September 5, 2014. Bruce Hall, James Rea, John E. (Ted) Rea, and Leslie

Wulf, known simply as the Founders, served as officers and/or directors of VBF and VBF Canada from approximately 2014 through 2017. All are Canadian citizens, except for Hall, who is a citizen of Texas.

### 1. Cassels and Sean Maniaci

VBF Canada first engaged Cassels, a Canadian law firm, in early 2014 to represent it in connection with "general corporate matters." Invoices and billing statements from Cassels also show that Cassels represented VBF Canada in relation to the following matters between 2014 and 2017: "Private Placement of Preferred Shares," "Opposing Flows Aquaculture," "December 2015 Offering," "Controlled Importation List Regulatory Matters," "Common Share Offering," Common Share Offering (Friends and Family), "Tank Leasing," and "Restructuring." Sean Maniaci is a partner in the Business Law Group at Cassels and was the partner primarily responsible for the legal matters related to VBF Canada. Maniaci was also a preferred shareholder of VBF Canada, having purchased shares both in his individual capacity and through his entity Sailstreet Capital.

### B. The Bankruptcy Filing

VBF filed its Chapter 11 Petition on September 21, 2018, in this Court. Under "all other assets," VBF's Schedules listed a cause of action against the Founders. Later, in an amended version of Schedules E/F filed on May 3, 2019,

VBF also listed potential claims against Cassels and Sean Maniaci individually. Cassels was listed in the Petition as one of the twenty creditors holding the largest unsecured claims. Cassels filed proofs of claim for legal services in VBF's bankruptcy, as well as the bankruptcies of four other related entities (VBF IP Inc., VBF Transport Inc., VBF Operations, Inc., and Iowa's First Inc.), on November 26, 2018. Each proof of claim listed the total amount claimed as $275,349.21. Invoices attached to the proofs of claim indicated that they had initially been mailed to Leslie Wulf at an address in Plano, Texas. The first invoice, dated December 31, 2016, provided that the charges related to "general corporate as well as tax advice relating to a potential restructuring; and correspondence with working group on all matters." The following invoice also referenced "restructuring" and "reorganization" work, alongside "stock dividend" issues. These proofs of claim were not withdrawn until August 2019, nearly a year later, after VBF filed this adversary proceeding. Cassels asserts that the proofs of claim were inadvertently filed.

In addition to his involvement in filing the proofs of claim, Maniaci further involved himself in VBF's bankruptcy when he authored a letter to "fellow VBF shareholder(s)" on Cassels letterhead. The letter, dated January 9, 2019, was sent to shareholders of both VBF and VBF Canada, though Maniaci owned shares only in VBF Canada at the time. Maniaci warned his fellow shareholders that "if … we do

nothing, it is very likely that we will receive little to nothing in the Bankruptcy Case. Time is not on our side and the time to protect your investment is now. To that end, the Equity Committee is reaching out to all VBF shareholders to get engaged in the process and, essentially, crowdfund litigation to protect our interests." This letter was offered as an exhibit in the VBF bankruptcy proceeding before this Court. Cassels later clarified that the "letter was written without the authorization of management of this firm, and, therefore, Mr. Maniaci's letter written in his personal capacity should not have been put on to our firm's letterhead."

### C. This Adversary Proceeding

On February 12, 2019, VBF sent a written demand letter to Cassels, requesting the turnover of all files related to Cassels' alleged representation of VBF and its Canadian affiliate, VBF Canada. After some back and forth, Cassels responded on March 20, 2019, refusing to produce any of the requested documents. Cassels asserted that it had never represented VBF, only VBF Canada. In March of 2019, VBF filed this adversary proceeding against Cassels, seeking to recover property of the bankruptcy estate.

Cassels filed its Answer on July 15, 2019 (Doc. 14). In it, Cassels argued that this Court lacked personal jurisdiction over it. Cassels did not make a formal motion to dismiss until March 31, 2020 (Doc. 60), after it had filed a motion to

strike VBF's initial complaint (Doc. 13), answered the original complaint twice

(Docs. 14 and 27), answered the amended complaint (Doc. 45), issued discovery to

VBF, filed a motion to quash VBF's subpoenas (Doc. 32), and answered some but

not all of VBF's discovery. The motion asserted that Cassels had essentially no

contact with Iowa outside of inadvertently filing the aforementioned proofs of

claim, which it eventually withdrew after this adversary proceeding was filed.

Cassels argued it never otherwise participated in the bankruptcy proceedings.

Ultimately, the Court found sufficient minimum contacts with Iowa to satisfy

personal jurisdiction, and further found that Cassels had waived its personal

jurisdiction defense through its extensive participation in this proceeding (Doc.

98).

D. Discovery

The initial Scheduling Order set a discovery deadline of December 31, 2019

(Doc. 26). The parties agreed to exchange initial disclosures under Fed. R. Civ. P.

26(a)(1) by August 30, 2019. VBF filed a Motion to Compel Discovery on

February 12, 2020 (Doc. 49). In its Motion to Compel, VBF argued that Cassels

improperly asserted a claim of attorney-client privilege, failed to provide a

privilege log to specify what documents were privileged, and failed to comply in

other ways with relevant discovery requests. On February 21, 2020, the Court

granted VBF's Motion and entered an order directing Cassels compliance (Doc.

53). The Court specifically concluded that Cassels had failed to provide a privilege log and ordered compliance with the discovery rules. On March 13, 2020, Cassels provided responses to discovery requests. Those responses reiterated objections which Cassels asserted in its original responses, including claims of attorney-client privilege. Cassels again failed to provide a privilege log to support these assertions.

VBF filed its Motion for Contempt on April 9, 2020 (Doc. 67), asserting that Cassels had failed to comply with the Court's February 12, 2020, Order compelling discovery. VBF pointed out that Cassels had still not filed a privilege log, despite the Court's clear instruction that a log was required to support any assertion of attorney-client privilege. Cassels responded to the Motion with another assertion that the documents were privileged and argued that they were otherwise irrelevant and subject to a "solicitor's lien" under Canadian law. Cassels asserted that its responses complied with the Court's Order in all other respects, but Cassels did not address the privilege log. Cassels later argued that it *could not* file a privilege log because such a log would reveal the location of the documents and give VBF an improper advantage. Despite the Court's Order, Cassels argued that a privilege log "would be a waste of the parties' resources and a waste of judicial resources."

The Court granted VBF's Motion for Contempt on April 22, 2021 (Doc. 117). The Court entered an Order finding Cassels in contempt of court for failing, among other things, to provide a privilege log. The Court ordered sanctions of

$1,000 per day until full compliance was achieved. On September 23, 2021, Cassels filed a Motion to Reconsider the Court's Contempt Order (Doc. 182). On October 15, 2021, VBF filed an objection to the Motion (Doc. 187). The Court granted Cassels' Motion to Reconsider in part on April 21, 2022 (Doc. 196). The Court limited the contempt ruling to the issue of the privilege log and ordered Cassels to pay VBF's attorney's fees and a $5,000 fine instead of the $1,000 per day initially ordered. The Court further ordered a stay in proceedings while litigation against the Founders proceeded in Texas.

The stay of proceedings was lifted on June 6, 2023. After an additional hearing, the Court agreed to conduct an in-camera review of the allegedly privileged documents. During the review of the thirty-nine four-inch binders full of documents, the Court determined that there were factual issues that needed to be resolved before the review could proceed. The Court held a telephonic status conference on the question of scope and application of the privilege on October 7, 2024, and determined that an evidentiary hearing should be held to address these issues. The evidentiary hearing was held on December 2, 2024.

### III. DISCUSSION

A. Summary Judgment

Both parties have filed a motion for summary judgment. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); Fed. R. Bankr. P. 7056. "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material facts exists. It is not enough to rest on the pleadings and allegations." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999) (citing Chism v. W.R. Grace & Co., 158 F.3d 988, 990 (8th Cir. 1998)). "They must show there is sufficient evidence to support a jury verdict in their favor." Id. The Court must consider each motion in turn and "[any] inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

### 1.  Action for Turnover – 542(a)

"The Bankruptcy Code creates a 'two-part scheme for turnover of property of the estate or other information related to the debtor's property or financial affairs.'" Foster v. Hill (In re Foster), 188 F.3d 1259, 1265 (10th Cir. 1999) (citing Keller v. Blinder (In re Blinder, Robinson & Co.), 140 B.R. 790, 792 (D. Colo. 1992)). "Section 542(a) requires anyone holding property of the estate to deliver it to the trustee." Id. Estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Cassels' Motion for Summary Judgment argues that this action for turnover fails as a matter of law because no attorney-client relationship existed between Cassels and VBF USA. Absent this relationship, it argues, the files are not VBF's property and thus cannot be the subject of a turnover action. VBF argues that an attorney-client relationship existed between the parties, as evidenced by the record in this case, and that Cassels is wrongly refusing to turnover VBF's property. Regardless, the Court can avoid the thorny debate over whether VBF was Cassels' client or not. Whether Cassels had an attorney-client relationship with VBF, and thus whether the files are estate property, is a factual issue that cannot be resolved on summary judgment. The motions for summary judgment related to turnover under § 542(a) must therefore be denied.

2. *Conversion*

The motions for summary judgment on the conversion count must also be denied for the reasons listed above. VBF asserts that it has "ownership and other possessory rights" in the files. To succeed on a conversion claim, VBF must show (1) that its ownership or other possessory right in the files exceeded Cassels' rights, (2) that Cassels exercised "dominion or control" over the files inconsistent with VBF's possessory rights, and (3) that VBF suffered damages as a result. Larew v. Hope Law, P.L.C., 977 N.W.2d 47, 60 (Iowa 2022) (citing In re Est. of Bearbower, 426 N.W.2d 392, 394 n.1 (Iowa 1988)). Whether VBF has ownership or other

10

possessory rights in the file depends on the existence of an attorney-client relationship between the parties. See, e.g. Iowa Supreme Court Atty. Disciplinary Bd. v. Gottschalk, 729 N.W.2d 812, 819–20 (Iowa 2007) ("[A] client owns his or her entire file.") Whether this relationship existed is a disputed factual issue, and the motions for summary judgment on the conversion count must therefore be denied.

### 3. Action for Turnover – 542(e)

The second part of the Code's "two-part scheme for turnover" can be found in § 542(e). That section provides as follows:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. §542(e). "Anyone, including the debtor, who has recorded information about estate property or debtor's financial affairs can be ordered to turn it over." Rupp v. Auld (In re Auld), 561 B.R. 512, 515 (B.A.P. 10th Cir. 2017). See also In re Foster, 188 F.3d at 1263 ("[Section 542(e)] empowers a court to order anyone holding recorded information about property of a bankruptcy estate to turn over the information to the estate's trustee."). Whether the documents constitute property of the estate is irrelevant to the analysis under § 542(e)—**the documents must only relate to estate property or the debtor's financial affairs**. See Faulkner v.

Kornman (In re Heritage Org., LLC), 350 B.R. 733, 739 (Bankr. N.D. Texas 2006)

("[D]ocuments which are not property of the estate may still be subject to turnover

under Section 542(e) if they relate to the debtor's property or financial affairs,

subject to any claim of privilege."); Grant, Konvalinka & Harrison, PC v. Banks

(In re McKenzie), 716 F.3d 404, 419 (6th Cir. 2013) ("[A]n action for turnover

under § 542(e) does not require that the information be property of the estate.")

(citing GKH v. Leroy, Nos. 08-16378, 11-1110, 2011 Bankr. LEXIS 5600, at *6–7

(Bankr. E.D. Tenn. Sep. 30, 2011)); Am. Metrocomm Corp. v. Duane Morris &

Heckscher LLP (In re Am. Metrocomm Corp.), 274 B.R. 641, 652 (Bankr. D. Del.

2002) (holding that "whether the [files] constitute property of the estate is

irrelevant to the Court's determination of whether turnover is proper under §

542(e)."); In re Auld, 561 B.R. at 521 ("In short, § 542(e) requires production or

turnover of recorded information that relates to debtor's property or financial

affairs, whether the recorded information is property of the estate or not."). Courts

have suggested that "the phrase 'relating to the debtor's property or financial

affairs' **should be broadly interpreted**." In re Heritage Org., 350 B.R. at 740

(emphasis added).

Estate property includes interests in causes of action, whether or not a

lawsuit has actually been filed. See Boisaubin v. Blackwell (In re Boisaubin), 614

B.R. 557, 562 (B.A.P. 8th Cir. 2020) ("Property of the estate includes causes of

action that a debtor could have brought at the time of filing a petition. … [A] cause of action is property of the estate even if a debtor was not aware of it."). Here, the Debtor has listed in its Schedules various causes of action, including potential claims against Cassels, Maniaci, and the Founders, alongside the existing lawsuit against the Founders.

| Cause of Action | Nature of Claim |
|---|---|
| Founders Lawsuit Case Number 18-CV-3047-CJW | Legal Malpractice and Lender Liability |
| Possible claims against Jackson Walker for possible malpractice or other misconduct (including, but not limited to, aiding and abetting) based on the possible failure to adequately protect VBF from the Founders' misconduct, failure to properly manage VBF's intellectual property, failure to disclose the Founders' misconduct, or to have otherwise assisted the Founders in committing their misconduct. | Legal Malpractice and possible aiding and abetting claim |
| Claim against Rick Sheriff for possible fraud for sale of technology to Debtor, including that the Opposing Flow Technology did not work as represented; possible misrepresentations regarding the patent protection of the Opposing Flow Aquaculture; possible conspiracy and aiding and abetting Founders for some of the breaches of duty alleged in the Founders Litigation currently pending in the United States Court for the Northern District of Iowa, including breaches regarding the fiduciary duty of due care; (mismanaging VBF, misrepresenting technology) and the OFA scheme alleged in the complaint. | Fraud; breach of fiduciary duty |
| Claim against Greg Sedun for possible conspiracy and aiding and abetting Founders, including transactions alleged in the complaint filed against the Founders in the United States District Court for the Northern District of Iowa through which Sedun received over one million shares in VBF Canada for nothing; Sedun was repaid a non-VBF loan by the Founders using VBF Funds. | Conspiracy and aiding and abetting |
| Possible claims against Sean Maniaci for possible malpractice or other misconduct (including, but not limited to, aiding and abetting) based on the possible failure to adequately protect VBF from the Founders' misconduct, failure to properly manage VBF's intellectual property, failure to disclose the Founders' misconduct, or to have otherwise assisted the Founders in committing their misconduct. | Legal Malpractice and possible aiding and abetting |
| Possible claims against Cassels Brock & Blackwell, LLP for possible malpractice or other misconduct (including, but not limited | Legal Malpractice and possible aiding and |

| | |
|---|---|
| to, aiding and abetting) based on the possible failure to adequately protect VBF from the Founders' misconduct, failure to properly manage VBF's intellectual property, failure to disclose the Founders' misconduct, or to have otherwise assisted the Founders in committing their misconduct. | abetting |
| Possible claims for aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduciary duty and other claims against FishDish, LLC arising out of and relating to the conduct alleged and to be alleged by VeroBlue USA, Inc. vs. Wulf, James Rea, John Rea, Bruce Hall, and Keith Driver in the USDC ND Texas Case no. 3:19-cv-00764-L, and including misconduct continuing into the year 2019. In addition, potential claims for commercial disparagement and defamation. | Aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduci[ary duty] |
| Possible claims for aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduciary duty and other claims against Keith Driver arising out of and relating to the conduct alleged and to be alleged by VeroBlue USA, Inc. vs. Wulf, James Rea, John Rea, Bruce Hall, and Keith Driver in the USDC ND Texas Case no. 3:19-cv-00764-L, and including misconduct continuing into the year 2019. | Aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduci[ary duty] |
| Possible claims for aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduciary duty and other claims against Terry Lyons arising out of and relating to the conduct alleged and to be alleged by VeroBlue USA, Inc. vs. Wulf, James Rea, John Rea, Bruce Hall, and Keith Driver in the USDC ND Texas Case no. 3:19-cv-00764-L, and including misconduct continuing into the year 2019. | Aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduci[ary duty] |
| Possible claims for aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduciary duty and other claims against Opposing Flows Aquaculture, Inc. arising out of and relating to the conduct alleged and to be alleged by VeroBlue USA, Inc. vs. Wulf, James Rea, John Rea, Bruce Hall, and Keith Driver in the USDC ND Texas Case no. 3:19-cv-00764-L, and including misconduct continuing into the year 2019. | Aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduci[ary duty] |
| Possible claims for aiding and abetting, conspiracy, tortious interference, fraud, breach of fiduciary duty and other claims against Les Wulf, James Rea, John Rea and Bruce Hall arising out of and relating to the conduct alleged and to be alleged by VeroBlue USA, Inc. | VeroBlue Farms USA, Inc. v. Les Wulf, James Rea, John Rea and Bruce Hall, USDC |

Even absent the broad interpretation the Court is to give the phrase "related to," the documents at issue are certainly related to at least two of these causes of action—the claims for legal malpractice against Cassels and Sean Maniaci

individually. Though less directly, the documents also relate to each of the other causes of action listed. Based on the documents submitted for review, Cassels worked closely with Jackson Walker on VBF matters. Jackson Walker is a U.S. law firm that was eventually hired to deal with VBF USA issues. Cassels also represented the Founders (officers and directors of VBF at the time) and certain of their entities in transactions that impacted VBF financially or otherwise.

Cassels has suggested that this Court must be careful not to allow VBF to engage in "backdoor discovery" related to the Founders lawsuit. While initially sharing Cassels' concern, the Court has become less sympathetic upon review of the documents submitted for in camera review, as discussed below. Other courts have brushed off this concern, suggesting that such "backdoor discovery" should not be a concern that ultimately precludes turnover. See In re Dawson, 587 B.R. 327, 329 (Bankr. W.D. Mich. 2018). In Dawson, the trustee sought turnover of documents from the debtors' counsel, specifically noting that he was building a case for legal malpractice against her. Id. at 328. The debtors asked the court to deny the trustee's request based in part on "the alleged impropriety of circumventing ordinary discovery procedures by resorting to the [t]rustee's turnover power under § 542." Id. at 329. The court was not persuaded, stating the following:

> As for the suggestion that the Motion improperly affords the Trustee
> pre-suit discovery on a state law claim, § 542(e) specifically

authorizes the document production the Trustee seeks, irrespective of the pendency of any proceeding other than the bankruptcy case itself. … Moreover, pre-suit discovery is not anathema in bankruptcy proceedings. … Similarly, the decision of Congress to permit trustees to gather information from debtors' professionals, reflected in 542(e), necessarily contemplates pre-suit discovery to some extent.

Id. See also Commodity Futures Trading Com. v. Weintraub, 471 U.S. 343, 353 (1986) ("In seeking the maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors."). Because the files at issue relate to estate property and the Debtor's financial affairs, they are subject to turnover unless the files are "[s]ubject to any applicable privilege," such as the attorney-client or work-product privileges. 11 U.S.C. § 542(e). Cassels has claimed that the attorney-client privilege protects all documents at issue—the entire VBF Canada client file.

### i. Attorney-Client Privilege

Cassels has, at times, cited to Canadian law on a variety of issues, including attorney-client privilege. Questions of privilege in a federal case are governed by principles of federal common law. Fed. R. Evid. 501; United States v. Zolin, 491 U.S. 554, 562 (1989). Federal common law includes choice-of-law rules, which "[c]ourts use … to determine whether to apply another forum's substantive law." Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 102 (S.D.N.Y. 2002) (citing American Dredging Co. v. Miller, 501 U.S. 443, 453–55 (1994)). Courts

will "always use their own procedural rules." Id. "The party invoking a foreign privilege has the burden of proving the applicability of the foreign law and must establish that the foreign law protects the communication from discovery." Cadence Pharms., Inc. v. Fresenius Kabi USA, LLC, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014). See also Smithkline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 535 (N.D. Ill. 2000) ("The burden is on the party asserting the privilege to provide the court with the applicable foreign law, and demonstrate that the privilege applies to the documents it seeks to exclude from discovery."). Cassels has inconsistently cited to Canadian law, sometimes sprinkling it in alongside both state and federal law. The Court is thus not convinced that Canadian law should apply here. However, whether Cassels has carried this burden or not is inapposite. "[A]s a general matter, confidential communications between attorney and client pertaining to legal advice fall within the attorney-client privilege under both Canadian and United States law." DNA Genotek Inc. v. Spectrum Sols. L.L.C., No. 21-cv-516, 2023 U.S. Dist. LEXIS 86981 (S.D. Cal. Feb. 28, 2023). Because the privilege analysis is so similar, the outcome here is the same whether the Court applies U.S. or Canadian law. Cassels has not even attempted to show that the analysis would differ in any important way under Canadian law.

"Under federal common law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3)

17

for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." <u>Wendt v. City of Denison</u>, No. 16-cv-4130, 2018 U.S. Dist. LEXIS 52550, at *6–7 (N.D. Iowa Mar. 29, 2018) (quoting <u>Sec. & Exch. Comm'n v. Microtune, Inc.</u>, 258 F.R.D. 310, 315 (N.D. Tex. 2009)).[1] Communications are confidential when there is an expectation that the information communicated will not be revealed to others. <u>In re Grand Jury Proceedings</u>, 791 F.2d 663, 665 (8th Cir. 1986). "After the client has communicated with the attorney with a reasonable expectation of confidentiality, thereby allowing the privilege protection to attach, the client must subsequently maintain that confidentiality in order to preserve the privilege." Paul R. Rice, <u>Attorney Client Privilege in the United States</u> § 6:31 (2021). The privilege extends only to *communications* between attorney and client, not to the underlying facts. <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395 (1981).[2] "[The client] may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." <u>Id.</u> (quoting <u>Philadelphia v. Westinghouse Electric Corp.</u>, 205 F. Supp. 830, 831 (E.D. Pa. 1962)) (internal quotations omitted). "A communication is not privileged simply because it is made

[1] The elements of the Canadian solicitor-client privilege are: (i) a communication; (ii) between solicitor and client; (iii) which entails the seeking or giving of legal advice; and (iv) is intended to be confidential by the parties. <u>Solosky v. R.</u>, [1980] 1 S.C.R. 821, 837 (Can.).
[2] "The privilege extends to communications in whatever form, but does not extend to facts which may be referred to in those communications if they are otherwise discoverable and relevant." <u>General Accident Insurance Co. v. Chrusz</u> [1999] O.J. No. 3291 (OCA) (citing <u>Susan Hosiery Ltd. v. M.N.R.</u>, [1969] 2 Ex. C.R. 27 at 34; <u>Grant v. Downs</u> (1976), 135 C.L.R. 674 at 686 (H.C.); R. Manes and M. Silver, Solicitor-Client Privilege in Canadian Law (Markham: Butterworths, 1993) at 127–33).

by or to a person who happens to be a lawyer." <u>Diversified Industries, Inc. v.</u>
<u>Meredith</u>, 575 F.2d 596, 602 (8th Cir. 1977).

For the privilege to apply, the party invoking it must show that the
documents or other materials being withheld were communicated to an attorney in
confidence for the purpose of receiving legal advice or assistance. <u>United States v.</u>
<u>Ivers</u>, 967 F.3d 709, 715 (8th Cir. 2020); <u>In re Grand Jury Proceedings</u>, 791 F.2d
663, 666 (8th Cir. 1986). <u>See also</u> <u>In re Hotels Nev., LLC</u>, 458 B.R. 560, 573
(Bankr. D. Nev. 2011) (quoting Rice, <u>supra</u>, § 4:30) ("The proponent of the
privilege bears the burden of persuasion for each element of the privilege,
unassisted by presumptions that confidentiality was intended and has been
preserved, or that legal advice was being sought through the consultations."). To
satisfy this burden, **the party must expressly make the claim** and "**describe the**
**nature of the documents**, communications, or tangible things not produced or
disclosed—and do so in a manner that, without revealing information itself
privileged or protected, **will enable other parties to assess the claim**." Fed. R.
Civ. P. 26(b)(5)(A)(ii) (emphasis added); Fed. R. Bankr. P. 7026. <u>See also</u> <u>In re</u>
<u>Fish and Neave</u>, 519 F.2d 116, 119 (8th Cir. 1975) (opponent must be given
sufficient information about the documents to argue against their being privileged).
The language of Rule 26 makes clear that **a blanket assertion of privilege will**

**not suffice**. Fed. R. Civ. P. 26(b)(5)(A)(ii). [3] <u>See also</u> <u>United States v. Willis</u>, 565 F. Supp. 1186, 1194 (S.D. Iowa 1983) ("Blanket assertions of privilege have been roundly and soundly condemned.") (citing <u>Colton v. United States</u>, 306 F.2d 633, 639 (2d Cir. 1962), *cert. denied*, 371 U.S. 951 (1963)). Instead, "[c]ourts almost universally require a party claiming privilege or work product to produce what is referred to as a 'privilege log,' which is a detailed list describing all of the items that come under the privilege or work product claim." 2 <u>Moore's Manual—Federal Practice and Procedure</u> § 15.03[9][a]. The log should be detailed enough to allow the court and other parties to determine whether the privilege applies to each document listed. 6 <u>Moore's Federal Practice – Civil</u> § 26.90 (2025). The following information should generally be included:

1. A brief description or summary of the content of the document or communication,
2. The date the document was prepared,
3. The name of the person who prepared the document,
4. The person to whom the document was directed, or for whom it was prepared,
5. The purpose for preparing the document or communication,

---

[3] "[P]rivilege can only be claimed document by document, with each document being required to meet the criteria for the privilege—(i) a communication between solicitor and client; (ii) which entails the seeking or giving of legal advice; and (iii) which is intended to be confidential by the parties." <u>Canada v. Solosky</u>, [1980] 1 SCR 821 (Can.). <u>See also</u> <u>General Accident Insurance Co. v. Chrusz</u> [1999] O.J. No. 3291 (OCA) (citing <u>Shaughnessy Golf & Country Club v. Drake International Inc. et al.</u> (1986), 26 D.L.R. (4th) 298 at 302–4 and 307–8, per Esson J.A. (B.C.C.A.):

> The adjudication of claims to client-solicitor privilege must be fact sensitive in the sense that the determination must depend on the evidence adduced to support the claim and on the context in which the claim is made. A claim to client-solicitor privilege in the context of litigation is in fact a claim that an exception should be made to the most basic rule of evidence which dictates that all relevant evidence is admissible. It is incumbent on the party asserting the privilege to establish an evidentiary basis for it. Broad privilege claims which blanket many documents, some of which are described in the vaguest way, will often fail, not because the privilege has been strictly construed, but because the party asserting the privilege has failed to meet its burden.

      6. The privilege or privileges asserted for the document or
         communication, and

      7. How the document or communication satisfies the asserted
         privilege or privileges.

Id. See also Willis, 565 F. Supp. at 1212–13. Submission of an inadequate or

untimely privilege log has been found, in many instances, to be grounds for

rejection of privilege claims all together.[4]

      Cassels, as the party asserting the privilege, bears the burden of showing that

the privilege protects the documents at issue. The Court originally ordered Cassels

to produce a privilege log on February 21, 2020. Despite the Court's order, Cassels

argued that a privilege log "would be a waste of the parties' resources and a waste

of judicial resources." After the Court found it in contempt, Cassels finally

produced privilege log on June 27, 2022, more than two years after the Court

ordered it to do so. Cassels' Privilege Log lists 6,965 individual documents,

numbered CBB00001 to CBB06965. The documents were delivered to the Court in

---

[4] Meade v. Gen. Motors, LLC, 250 F. Supp. 3d. 1387, 1393–96 (N.D. Ga. 2017) (finding waiver of attorney-client privilege where defendant, after twice being ordered by the court, produced a privilege log which "contain[ed] no explanatory information about the actual contents of the documents."); Carfagno v. Jackson Nat'l Life Ins. Co., No. 5:99cv 118, 2001 WL 34059032, *2 (W.D. Mich. Feb. 13, 2001) ("Defendant's failure to provide the court with information of sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents provides an independent ground for finding a waiver of any privilege or immunity."); Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd., No. 01 C 1576, 2001 U.S. Dist. LEXIS 20152, *7–8 (N.D. Ill. Dec. 5, 2001) ("If the description... fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work-product doctrine, then disclosure of the document is an appropriate sanction."); In re Grand Jury Subpoena, 274 F.3d 563, 676 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 240 F.R.D. 44, 48 (D. Conn. 2007) ("In the present case, over four months has lapsed without Nationwide's filing a privilege log. The court finds that this delay is unreasonable. By failing to provide a privilege log, Nationwide has failed to perfect its claim of privilege. ... Where a party has failed to show that documents are privileged, they are treated as non-privileged and, hence, discoverable."); PYR Energy Corp. v. Samson Resources Co., No. 1:05-CV-530, 2007 U.S. Dist. LEXIS 8696, *1 (E.D. Tex. Feb. 7, 2007) (denying all privilege claims because the proponent provided a privilege log, two weeks late, with descriptions "so vague and oblique as to be meaningless," and "no proffered justification for the assertion of any claim of privilege.").

thirty-nine (39) four-inch binders and, for the most part, organized chronologically.

Each binder was labeled with a volume number and the range of documents

included within. Volume 17, for example, included CBB02601 through CBB2800.

The time and expense that went into the production of these documents is not lost

on this Court. However, neither is Cassels' clear disregard for its adversary and

judicial resources. Cassels argued that a privilege log would be a waste of its time

and resources and refused to produce one, despite having been ordered to do so.

After being held in contempt and ordered to pay attorney's fees, Cassels decided it

was time to comply—on its own terms. These terms included **a refusal to narrow

its blanket claim of privilege** and instead deliver **nearly seven thousand

documents** to the Court for in camera review. A significant portion of these

documents are—on their face—not privileged. A number of them have been used

as exhibits by both parties or have otherwise been produced. Cassels acknowledges

this.[5] As for the rest of the documents, Cassels has not established that the privilege

applies despite having ample opportunity, both in creating its privilege log and at

the evidentiary hearing. The privilege log, meant to aid the Court in its review, is

devoid of any real substance. For example, the following entries were included:

| Fish 10.jpg | 6/16/14 | 4/29/21 | Email attachment | | |
| FW: Transfer Agent | 11/13/14 | 11/13/14 | | | |
| Fwd: Missing info | 11/15/14 | 11/15/14 | Email | John Rea | Litchen, Jamie |

[5] Kristin Taylor Deposition, 232:17-23.

| Email to Rick | 11/25/14 | 11/25/14 | Email | Litchen, Jamie | Maniaci, Sean |
|---|---|---|---|---|---|
| Fish Farming International | 11/26/14 | 11/26/14 | Email | Leslie Wulf | f@adroitinvest.com |
| Scan_1.pdf | 12/9/14 | 4/29/21 | Email attachment | | |
| RE: Vero Blue | 12/15/14 | 12/15/14 | Email | Litchen, Jamie | Maniaci, Sean |
| www.youtube .com/watch?v =oe0DFDX7y is | 1/9/15 | 1/9/15 | Email | Leslie Wulf | Maniaci, Sean |
| RE: more shells | 1/19/15 | 1/19/15 | Email | Siberstein, Noam | les@verobluefarms. com; Maniaci, Sean |
| VBF | 1/23/15 | 1/23/15 | Email | Leslie Wulf | |
| ATT00002.htm | 3/27/15 | 3/27/15 | Email Attachment | | |

The log contains no explanatory information about the contents of the documents or any indication that the communications were intended to be confidential in the first place. At the evidentiary hearing, Cassels provided no additional information as to any of the documents listed and called no witnesses. The Court's questions about why the file contained documents related to VBF—and why those should be considered privileged and withheld from VBF—went unanswered. Cassels has not offered any other relevant information for the Court to make a meaningful determination as to which documents could or should be protected by the attorney-client privilege. It simply—and wrongly—relied on a blanket assertion of privilege. In short, Cassels has not shown that each of the documents—or any document individually—contained confidential attorney-client communications made for the purpose of receiving legal advice. Because Cassels has failed to carry its burden despite numerous opportunities, it has waived its privilege claim. The

documents will be treated as non-privileged and therefore subject to turnover under

11 U.S.C. 542(e) as related to the property or financial affairs of VBF. The Court

thus grants VBF's Motion for Summary Judgment as to section 542(e).

There is still a Motion to Compel and for Sanctions pending. The Motion

will be set by separate order for an evidentiary hearing.

## IV. CONCLUSION

1. VBF's Motion for Summary Judgment is GRANTED, in part, and
   DENIED, in part.
2. Cassels' Motion for Summary Judgment is DENIED.


Ordered:                                    _____
                                            Thad J. Collins
   April 18, 2025                           Chief Bankruptcy Judge